IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS M. BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| VS. | ) | No. 13-1286-JDT-egb |
| | ) | |
| | ) | |
| ASSISTANT WARDEN DICKERSON, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DIRECTING CLERK TO MODIFY THE DOCKET,
DENYING DISCOVERY MOTIONS,
DENYING MOTIONS TO APPOINT COUNSEL,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Plaintiff Carlos M. Bush, a prisoner acting *pro se* who is currently confined at the U.S. Penitentiary Big Sandy in Inez, Kentucky, filed a civil complaint on October 21, 2013, concerning his previous confinement at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. (ECF No. 1.) The Court granted leave to proceed *in forma pauperis* and assessed the filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On December 2, 2013, the Court issued an order partially dismissing the complaint and directing that Defendants Tanja Campbell and Kiara Harwell be served with process.[1] (ECF No. 6.)

---

[1] The Clerk is directed to MODIFY the docket to include the first names of Defendants Campbell and Harwell.

Subsequently, Plaintiff was allowed to amend the complaint to allege an additional claim against Defendant Kesha King, who was then also served with process. (ECF Nos. 29, 34-1, & 48.)

On November 19, 2014, Plaintiff filed a motion to extend the time in which to complete discovery. (ECF No. 56.) That motion is denied as MOOT. Except for the specific items and information which are the subject of his motions to compel, Plaintiff does not contend that additional discovery is needed at this time.

Plaintiff filed a motion to compel discovery and a motion for a Court order to compel discovery on November 24, 2014. (ECF Nos. 57 & 58.) He stated that Defendants have refused to produce the following items, which he sought through an appropriate discovery request: (1) a copy of the maintenance logs and/or repair log books that would show any repairs on the door of his cell following the assault on November 1, 2012; (2) the name of the company that manufactured his cell door; and (3) a copy of any video surveillance footage showing Plaintiff's cell at the time of the assault. Defendants filed a response in opposition to the motions to compel. (ECF No. 60.)

Defendants objected to each of these specific requests. (*Id.* at 3-4.) However, with regard to the Plaintiff's request for maintenance and/or repair logs, Defendants also state that there are no such log books or other documents showing any repairs to the cell door on November 1, 2012, following the incident. As to Plaintiff's request for any relevant video footage, Defendants state that some video footage did exist and was reviewed shortly afer the incident, that footage was saved only for a certain period of time, in accordance with HCCF policies. Defendants state the footage was looped over before this case was ever filed. With regard to the door manufacturer, although Plaintiff states that he wants to call someone from the company as a witness in this case, he has not stated what information he seeks to elicit. As the Defendants concede there was no repair made to

2

Plaintiff's cell door after the incident, testimony would not be needed to explain any such repair. The Court finds that Plaintiff has not shown how the name of the door manufacturer is relevant to his claims in this case.

For the foregoing reasons, the motion to compel and for an order compelling discovery are DENIED.

Plaintiff has also filed two motions for appointment of counsel. (ECF Nos. 62 & 77.) Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted). "In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

Plaintiff has not satisfied his burden of demonstrating that the Court should exercise its discretion to appoint counsel in this case. Nothing in Plaintiff's motions serves to distinguish this case from the many other cases filed by *pro se* prisoners who are not trained attorneys and who have limited access to legal materials. In fact, Plaintiff has shown himself very capable of presenting his case. Therefore, the motions for appointment of counsel are DENIED.

The Defendants filed a motion for summary judgment on December 22, 2014. (ECF No. 61.) On January 30, 2015, Plaintiff responded to Defendants' statement of undisputed facts (ECF No. 64) and filed a cross-motion for summary judgment (ECF No. 65). Defendants filed a response to Plaintiff's motion on February 19, 2015 (ECF No. 67), and Plaintiff filed a reply on February 27, 2015 (ECF No. 68). Plaintiff also filed an Addendum to his motion on March 23, 2015, which includes various exhibits. (ECF No. 69.)[2]

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

---

[2] Plaintiff stated that he had just received his property. (ECF No. 69-1.) Previously, Plaintiff had stated that in the course of being transferred to another prison facility, his property, including his legal documents and papers for this case, were misplaced. (Pl.'s 11/6/14 Decl. ¶ 3, ECF No. 56-1 at 1.)

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The Defendants contend they are entitled to judgment as a matter of law because Plaintiff cannot show they acted with deliberate indifference to his safety or health. In the order of partial dismissal, the Court set forth Plaintiff's allegations against Defendants Harwell and Campbell:

> The complaint alleges that, on November 1, 2012, at approximately 8:00 p.m., Plaintiff was asleep in his bunk in the segregation unit of the HCCF when his securely locked cell door was opened and three inmates proceeded to beat him with blunt objects, causing deep lacerations and broken bones in his face. No officer was

6

present in the high security segregation unit when the assault occurred. Defendant Campbell was the Unit Officer on duty at the time. The electronic door to Plaintiff's cell could only be opened by an officer in the control booth. At the time of the assault, Defendant Harwell was the control booth officer; therefore, Plaintiff alleges she must have opened his door to let the assailants in. ([ECF No.] 1 at 2-3.)

(ECF No. 6 at 3.)

With regard to Defendant King, Plaintiff alleges that he pressed the emergency button to ask for medical help after the assault, and Defendant Harwell said she would call Sergeant King. About ten minutes later, King came to his cell and shook the door, looked in at him and smiled, said there was nothing wrong with him, and walked away. Plaintiff pushed the emergency button again, and Defendant Harwell told him Defendant King had said there was nothing wrong with him, so he should stop pushing the button. Plaintiff states he pleaded with Harwell for help, so she finally sent Defendant Campbell to check on him. Campbell saw that he was injured and called for help. (ECF No. 34-1 at 7-8.)

In support of their motion for summary judgment, Defendants have submitted their Declarations (Campbell Decl., ECF No. 61-2; Harwell Decl., ECF No. 61-3; & King Decl., ECF No. 61-5) and the Declaration of HCCF Chief of Security Johanna Veal (Veal Decl., ECF No. 61-4). In opposition to Defendants' motion for summary judgment and in support of his cross-motion, Plaintiff has submitted two separate Declarations (Bush 1/22/15 Decl., ECF No. 65-1; Bush 2/22/15 Decl., ECF No. 68-1),[4] and various exhibits (ECF Nos. 69-3 to 69-20).

Plaintiff's claims that Defendants Harwell and Campbell failed to protect him from assault by other inmates arise under the Eighth Amendment. "In the prison context, the Eighth Amendment

---

[4] Plaintiff's Declaration contains various statements concerning matters of which he cannot have personal knowledge as well as some argument. The Court will not consider those portions of the Declaration.

7

imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 415 (6th Cir. 2004).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Defendants Harwell and Campbell contend that summary judgment is appropriate on Plaintiff's claim for failure to protect because he cannot establish the subjective component of an Eighth Amendment violation. The undisputed evidence in the record establishes that on November 1, 2012, Defendant Harwell was assigned to work in the control room of the M-ABC Pods at the HCCF, which is made up of three pods: A, B, and C. The Plaintiff was housed in a cell in Pod A, in a segregated protective custody unit. Defendant Campbell was also assigned to work in the

8

M-ABC Pods; she was responsible for supervising the cells and performing "watch tours" of the M-ABC Pods, which involved periodic walk-throughs of each pod and a check of each cell. (Campbell Decl. ¶¶ 6-7, ECF No. 61-2 at 1-2; Harwell Decl. ¶¶ 6-7, ECF No. 61-3 at 1-2; Bush 1/22/15 Decl. ¶ 4, ECF No. 65-1 at 2.) Defendant King was the supervising officer for the M-ABC Pods on November 1, 2012. (King Decl. ¶ 6, ECF No. 61-5 at 1.)

Part of Defendant Harwell's job as the control room officer in the M-ABC Pods was to ensure Defendant Campbell's safety by observing while Campbell performed the watch tours of the pods. However, because the control room contained the controls for all of the cell doors within M-ABC Pods, Harwell was required to stay in the control room at all times. (Harwell Decl. ¶ 6, ECF No. 61-3 at 2.)

On November 1, 2012, Harwell was observing Defendant Campbell doing a watch tour of Pod C when Harwell glanced into Pod A and thought she saw Plaintiff's cell door quickly open and close. Harwell immediately radioed Defendant King to go to Pod A and do a security check. King did so and reported to Harwell that Plaintiff's cell door was secure and that he was fine, she did not believe there was a problem and that Plaintiff just wanted attention. (*Id.* ¶ 8; *see also* Harwell Incident Statement, ECF No. 69-15.) Defendant King states that Plaintiff's cell door was secure when she checked it and that she did not observe any injuries to Plaintiff or problems in the pod at the time, so she left Pod A. (King Decl. ¶ 7, ECF No. 61-5 at 1-2.) However, Plaintiff then "beeped" into the control room and complained that someone had jumped him. Harwell informed Campbell, who went to Pod A to check on Plaintiff and immediately saw that he was injured. Campbell called for medical assistance and notified King, who returned to Pod A to assist and notified her supervisor, . (*Id.* ¶ 8, at 2; Campbell Decl. ¶¶ 8-10, ECF No. 61-2 at 2; Harwell Decl.

9

¶¶ 9-10, ECF No. 61-3 at 2; Harwell Incident Statement, ECF No. 69-15; Campbell Incident Statement, ECF No. 69-16.) Plaintiff was taken to the medical department and then by van to the Jackson Madison County General Hospital for treatment. (Campbell Decl. ¶ 11, ECF No. 61-2 at 2.) Both Defendant Harwell and Defendant Campbell assert they were unaware, prior to the assault, of any facts leading them to believe that Plaintiff was in immediate danger of being assaulted by other inmates. (*Id.* ¶¶ 14-15, at 2; Harwell Decl. ¶¶ 13-14, ECF No. 61-3 at 3.)

Plaintiff states in his Declarations that on November 1, 2012, he was secured in his cell in Pod A when his cell door "buzzed" open, and other inmates entered and viciously assaulted him. He briefly lost consciousness twice. When he awoke, Plaintiff pressed the security button for help and informed Defendant Harwell that he heard her buzz his door open; he asked for medical help because he had been assaulted and injured. Harwell told him she was sending Defendant King to check on him. When King came to Plaintiff's cell, she looked him in the face and said there was nothing wrong with him, even though she could see that he was bleeding seriously from head wounds and broken facial bones. He asked Defendant King to get him medical help, but she shook her head, smiling, and walked off. Plaintiff states that he looked out his cell door and did not see Defendant Campbell in Pod A at that time. (Bush 1/22/15 Decl. ¶¶ 6-11, ECF No. 65-1 at 2-4; Bush 2/22/15 Decl., ECF No. 68-1 at 4-5.)

In the Incident Investigation Report prepared by HCCF Chief of Security Veal, it is stated that the video footage of the assault on Plaintiff that occurred on November 1, 2012, showed that four inmates were involved and that one of them used "an unknown object to gain access into [Plaintiff's] cell." (ECF Nos. 69-17 & 69-18.) In her Declaration, Veal states that an inmate "popped" Plaintiff's cell door with an unknown object. (Veal Decl. ¶ 7, ECF No. 61-4 at 2.)

The claim against Defendant Harwell is based primarily on Plaintiff's presumption that the inmates who assaulted Plaintiff would not have been able to open his secure cell door without damaging it unless Defendant Harwell had intentionally opened it for them. However, although Plaintiff vigorously argues his position, he has offered no actual evidence to support his contention that the cell door could not have been "popped" open by the inmates themselves. Thus, Plaintiff has not refuted Defendant Harwell's affirmative statement that she did not open Plaintiff's door to allow any other inmates into the cell. (Harwell Decl. ¶ 11, ECF No. 61-3 at 2.)

In the alternative, Plaintiff presumes that because he heard his door "buzz" when the inmates opened it, there also must have been a visible and/or audible alarm in the control room, which Defendant Harwell must have seen and/or heard and ignored. Again, Plaintiff has offered no actual evidence to support this contention, merely argument and speculation. Defendant Harwell states that when she saw Plaintiff's cell door quickly open and close, she immediately notified Defendant King, who went to check on Plaintiff. (*Id.* ¶ 8, at 2.)

Plaintiff's claim against Defendant Campbell is based on the allegation that she was not where she should have been at the time of the assault. He contends that, in order to ensure the safety of the protective custody inmates housed in the lower tier of Pod A, an officer is required to be present whenever the regular inmates housed in the top tier of Pod A are allowed out of their cells, as they were at the time he was assaulted. (Bush 2/22/15 Decl., ECF No. 68-1 at 5.) However, Plaintiff has not established that he has any personal knowledge of what Defendant Campbell's official job duties required of her at the time. In her Declaration, Campbell states that she was at her assigned station, performing her assigned duties and provided adequate supervision for the M-ABC Pod. (Campbell Decl. ¶ 12, ECF No. 61-2 at 2.) This evidence is unrefuted.

11

There is no evidence that either Defendant Harwell or Defendant Campbell was aware of, yet disregarded, an excessive risk to Plaintiff's safety.[5] Therefore, there is no genuine issue of material fact for trial as to Plaintiff's claims against Defendants Harwell and Campbell.

With regard to Defendant King, Plaintiff contends that she saw and deliberately ignored his serious injuries following the assault, thus causing a delay in the provision of medical care. This claim also arises under the Eighth Amendment. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners . . . by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson*, 398 F.3d at 874. Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). In this case, Defendant King does not dispute that the injuries Plaintiff sustained in the assault constituted a serious medical need.

---

[5] Plaintiff contends the mere fact that he was in protective custody shows Defendants knew there was a threat to his safety from other inmates. However, knowledge of such a general and non-specific threat is insufficient to support an Eighth Amendment claim. Plaintiff was required to show that Defendants knew of and disregarded a specific threat to his safety, yet he has failed to do so.

Plaintiff and Defendant King have submitted contradictory statements concerning King's actions when she initially responded to Harwell's request to check on Plaintiff. Defendant King states she did not observe that Plaintiff was injured in any way (King Decl. ¶ 7, ECF No. 61-5 at 2), while Plaintiff states that King looked directly at him and saw his injuries, yet merely smiled and walked away (Bush 1/22/15 Decl. ¶ 10, ECF No. 65-1 at 4; Bush 2/22/15 Decl., ECF No. 68-1 at 4-5).[6] However, while Plaintiff alleges that King's actions resulted in medical care being delayed, he concedes that the delay was only approximately ten minutes. (Bush 1/22/15 Decl. ¶ 14; ECF No. 65-1 at 5.) Furthermore, Defendant King states that neither her actions nor her inactions had any effect on Plaintiff's injuries. (King Decl. ¶ 14, ECF No. 61-5 at 2.) Plaintiff does not allege, and has submitted no evidence to suggest, that the very brief delay in medical treatment, even if caused by King's actions, exacerbated, worsened, or had any effect whatsoever on his injuries.

Based on the undisputed evidence in the record, the Court finds there is no genuine issue of material fact for trial on the issue of whether Plaintiff's injuries were affected by any delay in medical treatment attributable to Defendant King's actions.

For all of the foregoing reasons, the Court finds the Defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in

---

[6] Contrary to Defendant King's arguments (*see* ECF No. 66 at 4-5), if Plaintiff's version of these events is true, it would appear to preclude a finding that she "inadvertently" failed to observe that he was injured.

good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                                    s/ **James D. Todd**
                                                    JAMES D. TODD
                                                    UNITED STATES DISTRICT JUDGE